IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-00214-LTB-CBS

TYRONE W. ALLEN,

        Plaintiff,

v.

UNITED PROPERTIES AND CONSTRUCTION, INC.,
DYMANIC [sic] INTERNATIONAL FUNDING, INC.,[1]
KEVIN CLARK,
DENVER LENDING GROUP, INC., and
BOB P. TAYLOR,

        Defendants.

---

## RECOMMENDATION ON PENDING MOTIONS
## OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Craig B. Shaffer

      This civil action comes before the court on Defendants Denver Lending Group, Inc. and

Bob P. Taylor's [hereinafter "the Moving Defendants"] "Motion to Dismiss Amended

Complaint" (doc. # 56), filed on October 29, 2007. On December 12, 2007, Plaintiff Tyrone

Allen filed an "Amended Motion to Dismiss Defendants Taylor and Denver Lending Group, Inc.

Motion to Dismiss Plaintiffs Amended Complaint" (doc. # 66) [hereinafter, "Response Brief"]

and a "Reply Brief in Support of Plaintiffs Motion to Dismiss Defendants Bob P. Taylor and

Denver Lending Group, Inc. Motion to Dismiss Defendants (sic) Amened (sic) Complaint" (doc.

---

[1]Based upon other references in the Amended Complaint, the court will presume that the
caption contains a typographical error and that the proper name of this Defendant is "Dynamic
International Funding, Inc."

# 67) [hereinafter "Supplemental Response Brief"].  This court elected to treat the latter filings as Plaintiff's Response and Supplemental Response to the pending Motion to Dismiss Amended Complaint.  *See* Order (doc. 71), dated December 19, 2007.  The Moving Defendants filed a "Reply in Support of Motion to Dismiss Amended Complaint" (doc. # 76) on January 10, 2008.  Also before the court is Plaintiff Allen's "Amended Combined Motion and Brief in Support of Plaintiff's Motion for Summary Judgment" (doc. # 69), filed on December 12, 2007.  The Moving Defendants filed an "Objection and Response in Opposition to Motion for Summary Judgment" (doc. # 77) on January 11, 2008.  On March 12, 2008, Plaintiff Allen filed a "Motion for Temporary Restraining Order Request for Receivership Pursuant to Fed.R.Civ.P. 65 and Colorado Statute of Frauds" (doc. # 85) [hereinafter "Motion for Temporary Restraining Order"].  The Moving Defendants filed a "Hearing Brief in Opposition to Plaintiff's Motion for TRO" (doc. # 93) on March 25, 2008.

Pursuant to the Order of Reference dated January 31, 2007 (doc. # 3) and the memoranda dated October 29, 2007 (doc. # 57), December 13, 2007 (doc. # 70), and March 13, 2008 (doc. # 89), the subject pending motions were referred to the Magistrate Judge.  The court heard arguments on the pending motions during a hearing on March 26, 2008.  I have carefully reviewed the subject motions and related briefing, taken judicial notice of the court's entire file and considered the applicable Federal Rules of Civil Procedure and the applicable case law.  I have also considered the oral presentations by Mr. Allen and defense counsel during the March 26 hearing.  For the following reasons, the court will recommend that the Moving Defendants' motion to dismiss be granted, and that Plaintiff Allen's motions for summary judgment and injunctive relief be denied.

# FACTUAL BACKGROUND

To place the pending motions in context, it is necessary to recount in some detail the litigious history between Mr. Allen, Denver Lending Group, and Bob Taylor relating to the real property located at 2291 Elm Street, Denver, Colorado [hereinafter, "the Elm Street property"]. The following facts have been gleaned from the parties' pleadings, as well as the status reports filed by the Moving Defendants. As noted, Mr. Allen never responded to the latter submissions.

It appears to be undisputed that on or about March 20, 2006, Mr. Allen executed a promissory note and Deed of Trust to NewPoint Lending, LLC, pledging the Elm Street property as collateral for his obligation to NewPoint Lending. On the same day, Mr. Allen executed a Deed of Trust to United Properties and Construction, pledging a junior lien interest in the Elm Street property. Mr. Allen subsequently defaulted and NewPoint Lending initiated foreclosure proceedings against the Elm Street property. *See* Exhibit 6 attached to the Moving Defendants' Status Report (doc. # 74), filed on January 7, 2008.[2]

On August 28, 2006, Mr. Allen filed a federal lawsuit, Case No. 06-cv-17105-PSF-CBS, alleging that NewPoint Lending had violated the Truth in Lending Act. Defendant NewPoint Lending filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 41(b) on December 19, 2006, based upon Mr. Allen's alleged failure to prosecute his action and failure to comply with court orders. On February 12, 2007, Mr. Allen and NewPoint Lending filed a Stipulation for Dismissal with Prejudice pursuant to Fed.R.Civ.P. 41(a)(1), dismissing with prejudice all claims in Case No. 06-

---

[2]The court "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *United States ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992), cited in *City of Philadelphia v. Fleming Companies Inc.*, 264 F.3d 1245, 1251 n. 4 (10th Cir. 2001).

cv-01705-PSF-CBS.

Meanwhile, on or about August 29, 2006, pursuant to Colorado Rule of Civil Procedure 120, the District Court for the City and County of Denver authorized the Public Trustee for the City and County of Denver to sell the Elm Street property in accordance with the NewPoint Deed of Trust. The foreclosure sale took place on September 19, 2006, *see* Exhibit 6 attached to the Moving Defendants' Status Report, which meant that Mr. Allen's right to redeem the subject property would expire on December 4, 2006.[3] *See* Colo.Rev.Stat. § 38-38-302(1)(a).

On December 2, 2006, United Properties and Construction executed an assignment of its Deed of Trust to Bob Taylor and David Schmidt. On the same day, Messrs. Taylor and Schmidt executed a second assignment of the United Properties Deed of Trust. On December 5, 2006, the Public Trustee issued a Certificate of Redemption to United Properties. On December 6, 2006, the Public Trustee issued a Public Trustee's Deed conveying the Elm Street property to Bob Taylor. *See* Exhibit 1 attached to the Moving Defendants' Status Report

On or about December 14, 2006, Bob Taylor filed a Complaint in Forcible Entry and Unlawful Detainer in the County Court for the City and County of Denver, Colorado. That action, Case No. 06C35834, sought possession of the Elm Street property. Upon motion by Mr. Allen, Case No.06C35834 was transferred to the District Court for the City and County of Denver, Colorado, and assigned Case No. 07 CV 161 (hereinafter the "161 Action"). On

_____

[3]On September 20, 2006, Mr. Allen filed a Motion Pursuant to Rule 65(a)(1) of the Federal Rules of Civil Procedure in Case No.06-cv-01705-PSF-CBS, seeking to "enjoin certain Orders of the Denver District Court in the nature an (sic) Order authorizing the Public Trustee . . . to sell Plaintiff's property at public auction, and further Ordering the Pubic Trustee to issue a return of Sale." During court proceedings on November 13, 2006, I granted Mr. Allen's oral motion to withdraw his Motion Pursuant to Rule 65(a)(1).

January 25, 2007, the Denver District Court in the 161 Action entered a judgment in favor of Mr.

Taylor and against Mr. Allen.   On the same day, the Denver District Court entered an Order for

Possession which set forth the following findings of fact:

> 3.      On December 6, 2006, following the expiration of all applicable
> redemption periods, the Public Trustee for the City and County of Denver, State
> of Colorado, issued a Public Trustee's Deed conveying title to the [Elm Street
> property] to Plaintiff [Bob. P. Taylor] pursuant to C.R.S. §38-38-501.  The Public
> Trustee's Deed was received into evidence.

> 4.      On or about December 8, 2006, a Notice to Vacate (the "Demand") was
> delivered to the [Elm Street property].  A copy of the demand is attached to
> [Taylor's] Complaint and was admitted into evidence.

> 5.      Despite service of the Demand, Defendant [Tyrone Allen] continues to
> occupy the [Elm Street property].

> 6.      Pursuant to C.R.S. § 13-40-101 *et seq*, and C.R.S. § 38-38-101 *et seq*,
> [Taylor] is entitled to immediate possession of the [Elm Street property].

> 7.      Judgment for possession is hereby entered in favor of [Taylor] and against
> [Allen].

*See* Exhibit 4 attached to the Moving Defendants' Status Report.

On March 19, 2007, Mr. Allen filed a Motion to Vacate Judgment challenging the

January 25, 2007 Order for Possession.  *See* Exhibit 5 attached to the Moving Defendants' Status

Report (doc. # 74).  The Denver District Court denied that Motion on January 16, 2008, and

entered an award of attorney's fees and costs in favor of Taylor.  *See* Exhibits A-1 attached to

the Moving Defendants' Supplemental Status Report (doc. # 81), filed on January 17, 2008.

On January 18, 2007, eleven days before commencing the instant federal lawsuit, Mr.

Allen filed a Complaint in the District Court for the City and County of Denver, asserting claims

against United Properties and Construction, Inc., Dynamic International Funding, Inc., Kevin

Clark, Denver Lending Group, and Bob Taylor.  That Complaint, assigned Case No. 07 CV 563

(hereinafter the "563 Action"), appears to be virtually identical to the Complaint filed in this action on March 1, 2007. *See* Exhibit 2 attached to the Moving Defendants' Status Report. The Denver District Court, on Mr. Allen's motion, subsequently consolidated the 563 Action with the first-filed 161 Action. *See* Exhibit 3 attached to the Moving Defendants' Status Report. On January 31, 2007, Taylor and Denver Lending Group filed a motion to dismiss the 563 Action for failure to state a claim upon which relief could be granted and for failure to comply with the pleading requirements set forth in Colorado Rules of Civil Procedure 8(a)(2) and 9(b). *See* Exhibits 9 and 10 attached to the Moving Defendants' Status Report. On October 7, 2007, Taylor and Denver Lending Group moved for Entry of Order on their Motion to Dismiss in the wake of Mr. Allen's failure to respond to the latter motion. The Denver District Court dismissed with prejudice the claims against Defendants Taylor and Denver Lending Group in the 563 Action with an Order dated January 16, 2008. *See* Exhibit A-2 attached to the Moving Defendants' Supplemental Status Report.[4]

While the state suits were still pending, Mr. Allen initiated this action as a *pro se* plaintiff on January 29, 2007 by filing "Plaintiffs Motion Pursuant to Rule 65(I) Interlocutory Injunction Motion . . ." (doc. # 1), which sought injunctive relief from "orders issued by Judge Mullins, Denver District Court, case number 07CV161 and interlocutory injunction against defendants title, possession and writ of restitution." Mr. Allen's motion for injunctive relief was directed against United Properties and Construction, Inc., Dynamic International Funding, Inc., Kevin Clark, Denver Lending Group, Inc., Bob P. Taylor, the Denver District Court, and the Denver

---

[4]This court has not been provided with any information or documentation to show that Mr. Allen appealed the judgment entered in the 161 Action or the Order of Dismissal entered in the 563 Action.

Public Trustee's Office. On February 2, 2007, Defendants Denver Lending and Taylor moved to dismiss Mr. Allen's "Motion Pursuant to Rule 65(I)." *See* doc. # 5. This court issued a Minute Order on February 5, 2007 setting a hearing on all pending motions for March 1, 2007.[5]

Although Mr. Allen never responded to Defendants Denver Lending and Taylor's February 2, 2007 Motion to Dismiss, he did file a "Civil Complaint" (doc. # 13) on March 1, 2007, which named as defendants United Properties, Dynamic International, Kevin Clark, Denver Lending Group, and Bob P. Taylor. Mr. Allen's "First Prayer for Relief" was directed against Defendant United Properties and alleged violations of the Truth in Lending Act, 15 U.S.C. §§ 1639(a) and 1640, the Real Estate Settlement Procedures Act and related regulations, as well as Colo.Rev.Stat. §§ 38-10-107, 38-40-102 and 38-40-105. Plaintiff's "Second Prayer for Relief" named Defendant Dynamic International Funding and sought "statutory relief" and "additional monetary damages" pursuant to Colo.Rev.Stat. §§ 38-40-104 and 38-40-105(c). The "Third Prayer for Relief" alleged that Defendant Denver Lending Group had "lender liability" under an unspecified section of the Real Estate Settlement Procedures Act. The Third Prayer also seemingly alleged that Defendant Denver Lending had liability under the Colorado Consumer Protection Act, Colo.Rev.Stat. § 6-1-105(b), as well as Colo.Rev.Stat. § 38-40-104. Mr. Allen's "Fourth Prayer for Relief" accused Defendant Clark of fraud and "unconscionable conduct" under state and federal law. Finally, the "Fifth Prayer for Relief" alleged that Defendant Taylor had acquired title to the Elm Street property through "fraud" and sought to

---

[5]During the hearing on March 1, 2007, Mr. Allen withdrew his "Motion Pursuant to Rule 65(I)" and Amended Motion for Emergency Temporary Restraining Order (doc. # 2), which mooted the Motion to Dismiss (doc. # 10) filed by Defendant Denver District Court on February 28, 2007.

quiet title to the subject property with Mr. Allen.[6]

On March 21, 2007, the Moving Defendants renewed their Motion to Dismiss (doc. # 15). Their accompanying brief argued that Mr. Allen had failed to obtain proper service in accordance with Fed.R.Civ.P. 4, and that his Complaint failed to comply with the pleading requirements of Fed.R.Civ.P. 8(a)(2) and 9(b). The Moving Defendants further argued that Mr. Allen's Fifth Prayer for Relief against Defendant Taylor was barred by Mr. Allen's pending state litigation and the *Rooker-Feldman* doctrine.

In a Minute Order dated March 23, 2007, this court directed Mr. Allen to file his response to the Moving Defendants' Motion to Dismiss on or before April 10, 2007. Rather than filing a responsive brief, on April 10, 2007, Mr. Allen filed a "Motion for an Extension of Time to Respond to Defendants Motion and Brief to Dismiss" (doc. # 19). Mr. Allen explained that he required "additional time to compile the required information and calculations." I granted Mr. Allen' request and directed him to file a response to the Moving Defendants' Motion to Dismiss on or before April 20, 2007. Mr. Allen moved for a "Second Extension of Time to Respond to Defendants['] Motion and Brief to Dismiss" (doc. # 22) on April 20, 2007, stating that he required additional time because he "has discovered additional documents, and significant facts which will assist in plaintiff(s) case," and because he "needs additional time to verify and supplement the court file." In granting this motion, I directed Mr. Allen to file his responsive brief on or before May 4, 2007.

Although he missed the May 4th deadline, Mr. Allen filed an unopposed "Motion for Stay

---

[6]The original Complaint did not name the Denver District Court or the Denver Public Trustee's Office as defendants, thus effectively removing them from this litigation.

of Proceedings" (doc. # 25) on May 7, 2007. In his Motion for Stay, Mr. Allen advised that a hearing had been set by the Denver District Court in the 161 Action and represented to this court that all parties in the state action "are the identical parties in this case" and that "the matters at issue" in the state and federal lawsuits "are similar." According to Mr. Allen's motion for stay, the Denver District Court had expressed its intention to resolve ownership issues relating to the subject property and then address all other claims alleging fraud and violations of the Truth in Lending Act. Mr. Allen suggested that

> 4. It would be to the advantage of all parties and this honorable court to stay its proceedings at this time in these matters to avoid competing orders, and judicial conflict.

> 5. The Denver District court proceeding is senior, to the proceedings in this court, and the Denver District court has stated its intent to place all matters at issue on a fast track for Resolution.

*See* doc. # 25. Relying upon Mr. Allen's representations and without objection from Defendants Denver Lending and Taylor, the court granted a stay on May 16, 2007 and set a status conference for June 21, 2007, which was subsequently re-scheduled to July 9, 2007.

The court addressed the current posture of the federal and state lawsuits during the status conference on July 9, 2007. Mr. Allen advised that he had filed an amended complaint in the state court action and would be filing an amended complaint in this case, as well. Mr. Allen stated that his federal amended complaint would only address claims under the Truth in Lending Act and the Real Estate Settlement Procedures Act, and that he intended to pursue any fraud claims against the defendants in his state action. At the conclusion of the July 9th status conference, I lifted the stay previously imposed at Mr. Allen's request and ordered Mr. Allen to file his response to the Moving Defendants' pending Motion to Dismiss within 20 days.

After Mr. Allen missed that deadline, this court issued an Order (doc. # 39) on August 31, 2007, directing Mr. Allen to show cause in writing on or before September 14, 2007 why this civil action should not be dismissed with prejudice for failure to comply with the court's orders and rules, failure to timely serve defendants pursuant to Fed.R.Civ.P. 4 and failure to prosecute. The court warned Mr. Allen that failure to respond to the Order to Show Cause could result in a recommendation for dismissal of this action.

On September 14, 2007, Mr. Allen filed his "Brief in Responds [sic] to Court Order to Show Cause Pursuant to Local Rule 41(1)" (doc. # 42). Mr. Allen provided the following explanation for his past failures to comply with court orders and the Federal Rules of Civil Procedure:

> Prior to this controversy plaintiff Tyrone W. Allen, was suffering from Hypertension, (High Blood Pressure) which was medically diagnosed, and treated by Dr. Dave Garland, located at 100 Acoma Street, Colorado 80202. Plaintiff's Condition worsened after defendants wrongful took plaintiffs property, the condition went from mild to server, plaintiffs blood pressure was continually 160/110.

> On July 9, 2007, the lifted the stay and directed Mr. Allen to serve or show proof of service upon Clark, United Properties and Construction, and Dynamic International Funding, Inc. within 14 days and responds to a pending motion to dismiss within 20 days.

> Plaintiff's condition continued during this time, plaintiff(s) blood pressure was continually server, and plaintiff was suffering from numbs in his arms and chest pains. It was concluded that the major change in plaintiffs life, the unlawful Possession of plaintiff home could have caused the condition to worsen and plaintiff could not work or pay route bills such as utilities, and Dr. Garland's office issued a Medical Exemption on behalf of plaintiff to Xecel Energy, of Colorado.

> Plaintiff is ready and anxious to proceed and is not trying to delay this matter. At the time of this filing plaintiff as effectively served an summons and complaint upon defendants Clark, United Properties and Construction and Dynamic International Funding, with return of service filed with the clerk located

in the United States District Court House, Denver, Colorado.

*See* doc. # 42.[7]

Also on September 14, 2007, Mr. Allen filed a "Motion for Extention [sic] of Time Defendants Denver Lending Group, Inc., Bob P. Taylor Motion to Dismiss" (doc. # 41). Mr. Allen explained that a further extension of time until September 24, 2007 was required because he "was ill, and since plaintiff's illness, plaintiff has hired legal assistance. Plaintiff's legal assist [sic] is out of town until Monday 17, 2007."

Rather than responding to Denver Lending and Bob Taylor's Motion to Dismiss, on September 24, 2007, Mr. Allen filed a "First Amended Civil Complaint." A review of the First Amended Complaint reveals that the claims against Defendants Denver Lending and Taylor are virtually unchanged from the original Complaint. Both pleadings allege that Denver Lending Group, Inc. became liable to Mr. Allen after Defendant Taylor acquired title to the subject property from United Properties. *Compare* Complaint (doc. # 13), at p. 11, ¶ 1.1, and First Amended Complaint (doc. # 44), at p. 11, ¶ 1.1. Although Mr. Allen advised this court on July 9, 2007 that he intended to pursue his fraud claims in state court, "Plaintiffs Third Prayer for Relief" in the First Amended Civil Complaint continues to allege that Denver Lending Group engaged in "deceptive trade practice" under the Colorado Consumer Protection Act. *Compare* Civil Complaint (doc. # 13), at p. 16, ¶ 1.3, and First Amended Civil Complaint (doc. # 44), at p. 13, ¶ 1.3 The "Fifth Prayer for Relief" asserted against Defendant Taylor in the First Amended Civil Complaint is identical in every material respect to "Plaintiffs Fifth Prayer for Relief" in the

---

[7]The court has quoted Mr. Allen's "Brief in Responds to Court Order to Show Cause" exactly.

original Complaint. *Compare* Civil Complaint (doc. # 13), at p. 17. ¶ 1.1, and First Amended

Civil Complaint (doc. # 44), at p. 14, ¶ 1.1.

On October 29, 2007, Defendants Denver Lending Group and Taylor filed their Motion

to Dismiss Amended Complaint, incorporating by reference the arguments advanced in their

earlier Brief in Support of Motion to Dismiss, filed on March 21, 2007.  Mr. Allen filed an

"Amended Motion to Dismiss Defendants Taylor and Denver Lending Groups, Inc. Motion to

Dismiss Plaintiffs Amended Complaint" (doc. # 66), and a "Reply Brief in Support of Plaintiff's

Motion to Dismiss Defendants Bob P. Taylor and Denver Lending Group, Inc. Motion to

Dismiss" (doc. # 67) which the court elected to treat as response briefs.  *See* Order of December

19, 2007 (doc. # 71).

On November 16, 2007, Plaintiff filed a "Cross Motion for Summary Judgment and

Reply Pursuant to Defendants Taylor and Denver Lending Groups, Inc. Motion and Support

Brief to Dismiss" (doc. # 61), together with a supporting Brief (doc. # 62).  I denied the Cross

Motion for Summary Judgment in an Order dated December 12, 2007 (doc. # 71), based upon

Plaintiff's failure to comply with D.C.COLO.LCivR 7.1C ("A motion shall not be included in a

response or reply to the original motion.  A motion shall be made in a separate paper.").   Mr.

Allen filed an "Amended Combined Motion and Brief in Support of Plaintiffs Motion for

Summary Judgment" (doc. # 69) on December 12, 2007.

On January 2, 2008, I issued an Order (doc. # 73) directing the parties to file reports

describing in detail the status of proceedings in the 161 and 563 Actions.  This Order was

prompted by the parties' conflicting descriptions of the state actions.  Consistent with my Order,

Defendants Denver Lending and Taylor filed a Status Report (doc. # 74) on January 7, 2008, and

a Supplemental Status Report (doc. # 81) on January 17, 2008.  Mr. Allen never complied with

my January 2, 2008 Order requiring the parties to file separate status reports.

Based upon the information provided in the Moving Defendants' status reports, on July

9, 2008, I directed the parties to submit supplemental briefs addressing the possible res judicata

effect of rulings entered in the 161 and 563 actions.  On July 31, 2008, at the court's direction,

the Moving Defendants filed a "Supplemental Brief re: Res Judicata" (doc. # 97).  Although he

received an extension of time until noon (Mountain Time) on August 8, 2008, Mr. Allen failed to

file his required supplemental brief by the required deadline.[8]  To the contrary, a facsimile

---

[8]As the foregoing factual chronology makes clear, this was not the first time Mr. Allen failed to meet a court-imposed deadline.  In his Supplemental Brief, Mr. Allen provides explanations for his untimely submission that are contradicted by the the the pertinent docket entries. It may be useful to quote the pertinent portions of my Minute Order of August 1, 2008 (doc. # 99).

> While *pro se* plaintiff Allen's conclusory statements are insufficient to establish good cause for an extension of time, the court will grant a brief extension of time given the potential import of the issue at hand. . . . The deadline for Plaintiff to response to the Court's Order (*doc. no. 96*) entered July 9, 2008 is extended to no later than **Noon (Mountain Time) on Friday, August 8, 2008**.  Plaintiff is on notice with this Minute Order that no further extensions of this deadline will be permitted.

Mr. Allen's Supplemental Brief is simply incorrect when he says that the court granted an extension until "close of business day August 8, 2008."  Even assuming Mr. Allen was correct, his facsimile was not sent to the Clerk's Office until 6:03 pm.  Mr. Allen also states that he did not receive my August 1, 2008 Minute Order.  However, docket entries show that copies of the Minute Order were sent to both mailing addresses that Mr. Allen has used in the past.  *See* doc. ## 99 and 100.  Indeed, a copy of the Minute Order was mailed to the very same address that Mr. Allen listed on the signature block of his Motion for Extension of Time.  Neither mailing was returned to the court as undeliverable.  *Cf. Witt v. Roadway Express*, 136 F.3d 1424, 1429-30 (10th Cir. 1998) (noting that "a rebuttable presumption of receipt does arise on evidence that a properly addressed piece of mail is placed in the care of the postal service").

version of Mr. Allen's Supplemental Brief was received by the District Court at 6:03 pm after

the Clerk's Office had closed. The Clerk's Office filed stamped Mr. Allen's Supplemental Brief

on August 11, 2008. Under the circumstances, the court will not consider the arguments

presented in Plaintiff's untimely Supplemental Brief. *Cf. Leviton Manufacturing Co., Inc. v.*

*Nicor, Inc*., 245 F.R.D. 524, 530 (D.N.M 2007) (declining to consider an untimely submission).

## ANALYSIS

I.      *Defendants' Motion to Dismiss*

As noted, Plaintiff's Amended Complaint alleges that Defendant Denver Lending Group,

Inc. is owned and operated by Defendant Bob Taylor. The Amended Complaint avers that

United Properties and Construction conveyed to Defendant Taylor the redemption rights to Mr.

Allen's residence at 2291 Elm Street, Denver, Colorado. "Violations (sic) VI" of the Amended

Complaint alleges that Defendant Denver Lending is liable to Mr. Allen by accepting transfer of

redemption rights to the Elm Street property.[9] This same allegation against Defendant Denver

Lending appears to be set forth in Plaintiff's "Third Prayer for Relief," which alleges Denver

Lending "took possession of the loan during Plaintiff's redemption period." The Third Prayer

for Relief also alleges that Denver Lending engaged in an unspecified deceptive trade practice

under the Colorado Consumer Protection Act, C.R.S. § 6-1-105(1)(b). The latter statute defines

---

[9]While the Amended Complaint does not explicitly set forth the basis for this claim against Defendant Denver Lending, the court presumes that Mr. Allen is invoking the provisions of 15 U.S.C. § 1641(a), which provides that any claim under the Truth-In-Lending Act that might be brought against a creditor may also be maintained against any assignee of such creditor "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." Section 1641(d) also provides that "any person who purchases or is otherwise assigned a mortgage . . . shall be subject to all claims and defenses with respect to that mortgage that the consumer could assert against the creditor of the mortgage." 15 U.S.C. § 1641(d).

deceptive trade practices to include a knowing false representation "as to the source, sponsorship, approval or certification of . . . property." Finally, the Amended Complaint includes a "Fifth Prayer for Relief" against Defendant Taylor, which contends that Defendant Taylor's title to the 2291 Elm Street property is fraudulent and "should be quieted and set-a-side."

In their Motion to Dismiss Amended Complaint, which incorporates the brief supporting the earlier Motion to Dismiss, the Moving Defendants broadly argue, pursuant to Fed.R.Civ.P. 12(b)(6), that the Amended Complaint fails to state a claim upon which relief may be granted. More specifically, they insist that Plaintiff failed to properly serve them in accordance with Fed.R.Civ.P. 4(e) and (h), and never served a summons as required by Fed.R.Civ.P. 4(b), thus justifying dismissal under Fed.R.Civ.P. 12(b)(2), 12(b)(4) and 12(b)(5). The Moving Defendants also contend that Plaintiff has not satisfied the pleading requirements set forth in Fed.R.Civ.P. 8(a) because the Amended Complaint does not contain a "short and plain statement of Allen's claims showing that he is entitled to relief." The Amended Motion to Dismiss further argues that the Amended Complaint fails to plead fraud allegations with particularity, as required by Fed.R.Civ.P. 9(b). Finally, the Moving Defendants insist that the court lacks subject matter jurisdiction over the Fifth Prayer for Relief based upon the *Rooker-Feldman* doctrine.

A.     Standard of Review

Under Rule 12(b)(1), a motion to dismiss may be granted if the court does not have subject matter over the matter. In addressing a jurisdictional challenge, the court need not presume all of the allegations contained in the complaint to be true, "but has wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed

15

jurisdictional facts . . . ."  *United States v. Rodriguez Aguirre*, 264 F.3d 1195, 1204 (10th Cir.

2001) (citation omitted).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim

upon which relief can be granted."  *See* Fed.R.Civ.P. 12(b)(6).  To withstand a motion to

dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is

plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007).  As the

Tenth Circuit explained in *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th

Cir. 2007),

> the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts
> in support of the pleaded claims is insufficient; the complaint must give the court
> reason to believe that *this* plaintiff has a reasonable likelihood of mustering
> factual support for *these* claims.

"The burden is on the plaintiff to frame 'a complaint with enough factual matter (taken as true)

to suggest' that he or she is entitled to relief."  *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th

Cir. 2008), quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1965.  A complaint must set

forth sufficient facts to elevate a claim above the level of mere speculation.  *Id.*

B.     Alleged Service Deficiencies

Pursuant to Rule 12(b)(5), the court may dismiss a complaint for insufficient service of

process.  *See* 5B Fed. Prac. & Proc. Civ. 3d § 1353 (2008 Supp.) ("A Rule 12(b)(5) motion is the

proper vehicle for challenging" the sufficiency of the service of process, *i.e.*, "the mode of

delivery or lack of delivery of the summons and complaint.").  Examples of insufficient service

include serving the wrong person or serving an individual not authorized to accept service for a

defendant.  "In opposing a motion to dismiss for insufficient service of process, plaintiff bears

the burden to make a prima facie case that he has satisfied statutory and due process

requirements so as to permit the court to exercise personal jurisdiction over defendant." *Fisher v. Lynch*, 531 F. Supp.2d 1253, 1260 (D. Kan. 2008). "The parties may submit affidavits and other documentary evidence for the Court's consideration, and plaintiff is entitled to the benefit of any factual doubt." *Id.*

As no waivers of service have been filed with the court, Mr. Allen must comply with the service requirements of Fed.R.Civ.P. 4(e) which governs service on individuals. Rule 4(e) provides that service may be effected by personal delivery, delivery at the individual's dwelling house or usual place of abode, delivery on the individual's authorized agent, or pursuant to the laws of the State of Colorado.[10] On a Rule 12(b)(5) motion to dismiss for insufficient service,

---

[10]An individual may be served in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," or by

    (2) doing any of the following:

        (A) delivering a copy of the summons and of the complaint to the individual personally;

        (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

        (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed.R.Civ.P. 4(e). Rule 4(e) of the Colorado Rules of Civil Procedures states as follows:

    (e) Personal Service. Personal service shall be as follows:

        (1) Upon a natural person whose age is eighteen years or older by delivering a copy thereof to the person, or by leaving a copy thereof at the person's usual place of abode, with any person whose age is eighteen years or older and who is a member of the person's family, or at the person's usual workplace, with the person's secretary, administrative assistant, bookkeeper, or managing agent;

the plaintiff "has the 'advantage of having the facts resolved in its favor.'" *Montgomery,*

*Zukerman Davis, Inc. v. Diepenbrock*, 698 F. Supp. 1453, 1459 (S.D. Ind. 1988), quoting

*Captain International Industries, Inc. v. Westbury, Chicago, Inc.*, 416 F. Supp. 721, 722 (N.D.

Ill. 1975).

As of the hearing on March 1, 2007, there were no entries in the court's docket showing a

return of service for any of the defendants named in the original motion for preliminary

injunction. The Moving Defendants contend that they received a copy of the original Complaint

by electronic notice on March 1, 2007. Plaintiff argues that any defect in service upon

Defendants Denver Lending and Taylor was cured with the affidavits and returns of service

dated October 18, 2007 and filed with the Clerk of Court on October 21, 2007. *See* Plaintiff's

Response Brief, at 5.[11]

Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent part

[i]f a defendant is not served within 120 days after the complaint is filed, the court
-- on motion or on its own after notice to the plaintiff -- must dismiss the action
without prejudice against that defendant or order that service be made within a
specified time. But if the plaintiff shows good cause for the failure, the court
must extend the time for service for an appropriate period.

The 120-day period to effect service upon the Moving Defendants expired no later than June 30,

2007. Rule 4(m) does not specifically define "good cause." The Advisory Committee Notes to

Rule 4 provide examples of grounds sufficient to relieve a plaintiff from the consequences of

---

or by delivering a copy to a person authorized by appointment or
by law to receive service of process.

[11]On October 22, 2007, Plaintiff Allen submitted Affidavits of Service "Pursuant to
Magistrate Judge Shaffer's Memorandum Order" (doc. # 54). In this submission, Plaintiff
claimed that "[s]ervice was perfected upon Denver Lending Group and Bob P. Taylor summons
and complaint October 18, 2007."

Rule 4(m), such as "to protect pro se plaintiffs from consequences of confusion or delay attending the resolution of an in forma pauperis petition." Notes of Advisory Committee on Rules, 1993 Amendments to Fed.R.Civ.P. 4(m). Whether the plaintiff establishes good cause for failure to timely serve a summons and complaint is a discretionary determination entrusted to the court. The plaintiff bears the burden of showing good cause. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985) (Rule 4 "plainly places the burden on the plaintiff to show good cause") (citations omitted). Plaintiff Allen has not come forward with any facts that would establish good cause for failing to effect proper service in a timely manner.

While Rule 12(b)(5) permits dismissal of an action for improper service of process, that remedy is not absolutely required. The technical requirements of Rule 4 should be construed liberally in those cases where the defendant had actual notice of the pending suit. In such cases, "every technical violation of the rule or failure of strict compliance may not invalidate the service of process." *Elkins v. Broome*, 213 F.R.D. 273, 275 (M.D. N.C. 2003). *Cf. Miree v. United States*, 490 F. Supp. 768, 776 (N.D. Ga. 1980) (a case should not be dismissed for insufficient service unless the defendant has been seriously prejudiced by the mistake or by the delay in correcting it). This court has broad discretion to retain the case, but to quash the defective service, particularly where "there is a reasonable prospect that plaintiff will ultimately be able to serve defendant[s] properly." *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. at 1459, quoting 5 Wright and Miller, *Federal Practice and Procedure* § 1354, at 586 (2d ed. 1987). *Cf. Plant Genetic Systems, N.V. v. CIBA Seeds*, 933 F. Supp. 519, 527 (M.D.N.C. 1996) (noting that dismissal under Rule 12(b)(5) is not justified in a case where it appears service may be properly effected). Dismissal in such a case "would be without prejudice

and would probably lead to the reinstitution of the suit . . . [thereby] needlessly burden[ing] [the plaintiff] with additional expense and delay [while] postpon[ing] the adjudication of the controversy's merits."  *Montgomery, Zukerman, Davis, Inc. v. Diepenbrock*, 698 F. Supp. at 1459.  Under the particular circumstances of this case, and in view of the court's Recommendation, nothing would be gained by dismissing the Amended Complaint pursuant to Rule 12(b)(6).  Rather, it seems more efficient to retain the action and address the substantive challenges to the Amended Complaint.

C.     Alleged Pleading Deficiencies

Rule 8(a) of the Federal Rules of Civil Procedure states that a complaint shall contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  This pleading requirement is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993).  *See also Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas*, 891 F.2d 1473, 1480 (10th Cir. 1989); *TV Communications Network, Inc. v. ESPN, Inc.*, 767 F. Sup. 1062, 1069 (D. Colo. 1991), *aff'd*, 964 F.2d 1022 (10th Cir. 1992).  The information provided by the pleader must be adequate to set forth the basis of his claim "as distinguished from a bare averment that he wants relief and is entitled to it."  *See* 5 Wright and Miller, *Federal Practice and Procedure* § 11215, at 194 (3d ed. 2004).  The court may disregard and dismiss without a hearing claims that are vague and conclusory.  *Johnson v. Richards*, 617 F. Supp. 113, 114 (W.D. Okla. 1984).  *See also Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (a failure to provide specific factual allegations renders a complaint vague and conclusory).  A decision to dismiss a complaint pursuant to Rule

8 is within the trial court's sound discretion.  *See Adkins v. Northwest Airlines, Inc.*, 967 F.2d 1197, 1203 (8th Cir. 1992); *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969).

Plaintiff's Amended Complaint must be construed liberally because he is representing himself.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards that formal pleadings drafted by lawyers"); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[a] pro se litigant's pleadings are to be construed liberally") (citations omitted).  If a complaint reasonably can be read "to state a valid claim on which [a] plaintiff could prevail, [a court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."  *Id.*  However, a court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).  *See also Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

The Amended Complaint is certainly not a model of clarity and often difficult to interpret.  Plaintiff's pleading shortcomings are compounded by his use of repetitive paragraph numbers and Mr. Allen's method of denominating "violations."  Giving the Amended Complaint a liberal construction, the court will presume that Plaintiff's "Prayers for Relief" are meant to set forth separate claims for relief.

Defendant Denver Lending is named in "Violations VI" and the Third Prayer for Relief. "Violation VI" alleges that "Denver Lending Group, Inc., became "Defendant" upon the transfer from United Properties and Construction" and that Denver Lending "must bear transferee liability." However, the Amended Complaint elsewhere alleges that United Properties transferred its interest to "Bob Taylor, President of Denver Lending, Group on or about December 3, 2006," *see* Amended Complaint, at ¶ 1.13, and that "Bob P. Taylor took title in his personal name." The Third Prayer for Relief alleges that Denver Lending "maintain (sic) lender liability" and "took possession of the loan during Plaintiff's redemption period." Again, this allegations seems to contradict the assertion that Defendant Taylor took title to the Elm Street property in his individual capacity. The Third Prayer for Relief contends that Mr. Allen is seeking "additional statutory damages under C.R.S. § 38-40-104."[12]

The Fifth Prayer for Relief against Defendant Taylor "contends that [Mr. Taylor's] title is fraud and should be quieted and set-a-side." The Fifth Prayer alleges that Defendant Taylor "have (sic) conveyance from Defendant United Properties and Construction, the conveyance is voidable under the color of state law it was performed to defraud the Plaintiff." This cursory allegation lacks sufficient facts to cross the threshold of plausibility and raise a claim of entitlement to relief. *Cf. Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1966 (holding that "an allegation of parallel conduct and a bare assertion of conspiracy will not" satisfy Rule 8 in Sherman Act case).

Plaintiff Allen addressed these pleading deficiencies in his "Response Brief" (doc. # 66)

---

[12]Section 38040-104(2) specifically provides that "[n]o transferee from a lender shall be liable for any act or omission of the lender under section 38-40-102," which sets forth disclosure obligations on the part of a lender.

and his "Supplemental Response Brief" (doc. 67). Mr. Allen concedes that he "is asserting additional claims and claims with peculiarly (sic) and detail against defendants," and "has asserted new facts and supplemented the court file, through his amended motion and Brief." *See* Plaintiff's Response Brief, at 3. *But see Neff v. Standard Federal Bank*, 2007 WL 2874794, *9 (S.D. Ohio 2007) (rejecting plaintiff's attempt to correct pleading deficiencies in his complaint by adding new factual allegations in his response brief). *Cf. Turner v. McKune*, 2001 WL 1715793, *3 n. 1 (D. Kan. 2001) (holding that the court will not consider new claims which plaintiff did not include in his complaint and presented for the first time in a response brief).

As for the claims against Denver Lending, Mr. Allen seems to suggest that defendant has liability as an alter ego of Defendant Taylor. *See* Plaintiff's Supplemental Response Brief, at 11. The Tenth Circuit has identified several factors that should be considered in determining whether a corporation and it shareholder are alter egos. *Lowell Staats Mining Company, Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1262-63 (10th Cir. 1989). The Amended Complaint does not allege any facts that support an alter ego theory of liability against Denver Lending Group, Inc. I do not find that Plaintiff's allegations against Denver Lending satisfy either Rule 8 or the Supreme Court's test in *Bell Atlantic Corp.*

Plaintiff's Supplemental Response Brief, for the first time, alleges that the quiet title claim against Defendant Taylor is based upon 15 U.S.C. § 1641(d). While Mr. Allen's briefing is often very difficult to follow, he appears to argue that Kevin Clark failed to properly disclose a mortgage broker fee and did not provide proper notice of recision rights in connection with United Properties' loan to Mr. Allen, *see* Plaintiff's Supplemental Response Brief, at 7, and that Taylor acquired the Elm Street property subject to all claims that Plaintiff had against United

Properties and Clark. Unfortunately, these allegations do not appear in the Fifth Prayer for Relief to the Amended Complaint.

More importantly, the claims against Denver Lending and Taylor fail to comply with the requirements of Rule 9(b). Rule 9(b) requires that "in all averments of fraud . . . the circumstances constituting fraud . . . shall be stated with particularity." *See Jurgens v. Abraham*, 616 F. Supp. 1381, 1386 (D. Mass. 1985) (holding that Rule 9(b) pleading requirements are applicable even if the complaint does not explicitly use the word "fraud"). Compliance with Rule 9(b) provides a defendant with fair notice of the plaintiff's claims and the factual grounds upon which they are based. *United States v. Cheng*, 184 F.R.D. 399, 401 (D. N.M. 1998). *See also Gardner v. Investors Diversified Capital, Inc.*, 805 F. Supp. 874, 876 (D. Colo. 1992) (allegations of fraud must provide sufficient notice of the grounds upon which the claim rests to permit the defendant to answer or otherwise defend itself). "Simply stated, a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997).

Plaintiff's Third Prayer for Relief against Defendant Denver Lending seems to allude to a violation of the Colorado Consumer Protection Act, which proscribes deceptive trade practices involving false representations relating to property. The Amended Complaint, however, does not allege how or when Denver Lending made representations to Mr. Allen or describe the content of those representations. In short, Plaintiff's Consumer Protection Act claim is wholly deficient under Rule 9(b) and should be dismissed.

The Fifth Prayer for Relief is equally deficient under Rule 9(b). While Mr. Allen

contends that Taylor's title to the Elm Street property is "fraud" and that United Properties transferred its interest "to defraud the Plaintiff," the Amended Complaint provides no facts to support these allegations. Rather than curing this deficiency, Plaintiff seems to assert a new fraud claim by alleging that Defendant Taylor "maintains liability for fraudulent documents" pursuant to C.R.S. § 38-35-109(3)." *See* Plaintiff's Supplemental Response Brief, at 8. The Supplemental Response Brief also argues that Defendant Taylor and his attorneys "knew that Clark and UPC committed perjury" in violation of C.R.S. § 38-38-303. The latter statutes are not cited anywhere in the Amended Complaint, and certainly not within the current version of the Fifth Prayer for Relief. Far from curing the pleading deficiencies in the Fifth Prayer for Relief, Plaintiff's Supplemental Response Brief proposes additional theories without sufficient factual support. I recommend that the claims against Defendants Denver Lending and Taylor be dismissed for failure to comply with the pleading requirements under Fed.R.Civ.P. 8 and 9(b).

D.    Application of the *Rooker-Feldman* Doctrine

Defendant Taylor contends that the injury alleged in the Fifth Claim for Relief arises directly from the Denver District Court's Order in the 161 Action that "quieted title to the Real Property in Taylor." *See* Moving Defendants' Brief in Support of Motion to Dismiss, at 5. Based upon that prior state judgment, Defendant Taylor argues that the federal court lacks subject matter jurisdiction over this claim under the *Rooker-Feldman* doctrine.[13] "*Rooker-*

---

[13]While Defendant Denver Lending could not rely upon the *Rooker-Feldman* doctrine in moving to dismiss the claims asserted by Plaintiff Allen, it might have moved to stay all proceedings in this case during the pendency of the 563 Action. A federal court may stay in deference to parallel state proceedings under "exceptional circumstances" that promote the important countervailing interests of wise judicial administration, conservation of judicial resources, and comprehensive disposition of litigation. *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976). *See also General Steel Domestic Sales, LLC*

*Feldman* is a matter of federal law and operates as a subject-matter jurisdictional bar that may be raised at any time." *Guttman v. Khalsa*, 401 F.3d 1170, 1173 n. 2 (10th Cir. 2005). *See also Kenmen Engineering v. City of Union*, 314 F.3d 468, 479 (10th Cir. 2002) ("The *Rooker-Feldman* doctrine is a *jurisdictional* prohibition") (emphasis in original).

"The *Rooker-Feldman* doctrine is the product of two Supreme Court cases interpreting 28 U.S.C. § 1257(a)." *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir. 2004). "This doctrine is based upon an inference that follows from 28 U.S.C. § 1257(a) which provides that '[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari.'" *Guttman v. Khalsa*, 401 F.3d 1170, 1173 (10th Cir.), *judgment vacated on other grounds*, 126 S.Ct. 321 (2005). "In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-416 (1923), the Supreme Court held that lower federal courts may not hear claims actually decided by a state court." *Crutchfield v. Countrywide Home Loans*, 389 F.3d at 1147. "Sixty years later in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n. 16 (1983), the Court extended the holding of *Rooker*

---

*v. Steelwise LLC*, 2008 WL 1744276, *3 (D. Colo. 2008). It cannot be disputed that this case and the 567 Action were parallel proceedings. *See Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) ("Suits are parallel if substantially the same parties litigate substantially the same issues in different forums"). Plaintiff Allen conceded as much in his May 7, 2007 "Motion for Stay of Proceedings" (doc. # 25). Allen noted that all parties in the state action "are the identical parties in this case" and that "the matters at issue" in the state and federal lawsuits "are similar."

> It would be to the advantage of all parties and this honorable court to stay its proceedings at this time in these matters to avoid competing orders, and judicial conflict. . . . The Denver District court proceeding is senior, to the proceedings in this court, and the Denver District court has stated its intent to place all matters at issue on a fast track for Resolution.

*See* doc. # 25.

to claims that are 'inextricably intertwined' with a state court judgment." *Id. See also Guttman v. Khalsa*, 401 F.3d at 1173 ("Under the doctrine that has arisen from two Supreme Court cases, . . . a federal district court does not have subject matter jurisdiction to hear appeals from final judgments of state courts").

While Mr. Allen's Fifth Prayer for Relief seeks to quiet title to the Elm Street property based upon an alleged fraudulent conveyance from United Properties to Defendant Taylor, this appears to be a thinly veiled attempt to overturn, or at least to call into question the validity of the Denver District Court's judgment in the 161 Action. The Denver District Court specifically found that Taylor was entitled to immediate possession of the Elm Street property.

However, the *Rooker-Feldman* doctrine "is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). *See also Bolden v. City of Topeka, Kansas*, 441 F.3d 1129, 1143 (10th Cir. 2006) ("Appellate review – the type of judicial action barred by *Rooker-Feldman* – consists of a review of the proceedings already conducted by the lower tribunal to determine whether it reached its result in accordance with law"); *Kiowa Indian Tribe of Oklahoma v. Hoover*, 150 F.3d 1163, 1169 (10th Cir.1998) (under the *Rooker-Feldman* doctrine, a party who loses in state court is barred "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights").

In the wake of the Supreme Court's decision in *Exxon Mobil*, the Tenth Circuit has held that *Rooker-Feldman* applies only to federal suits that are filed after state proceedings are final.

*See Guttman v. Khalsa*, 446 F. 3d at 1032. *See also Allen v. National City Bank of Pennsylvania*, 2007 WL 2341010, *5 (D. Colo. 2007). The Tenth Circuit has agreed with other Circuit Courts on "several situations in which a state-court judgment could be considered final for *Rooker-Feldman* purposes . . . ." *Bear v. Patton*, 451 F.3d 639, 641 (10th Cir. 2006) (citations omitted). For example, a state court judgment would be considered final for purposes of *Rooker-Feldman* where "a lower state court issues a judgment and the losing party allows the time for appeal to expire," or "if the state action has reached a point where neither party seeks further action." *Id.* at 642.

This court must determine whether Mr. Allen is seeking what in substance would be appellate review of a "final judgment" entered by the Denver District Court in the 161 Action. If the 161 Action was "final" upon issuance of the Denver District Court's January 25, 2007 Order, then finality occurred before Plaintiff Allen filed the instant action and the *Rooker-Feldman* doctrine requires dismissal of the Fifth Prayer for Relief. Under Rule 4 of the Colorado Appellate Rules, Mr. Allen was required to file a notice of appeal within 45 days of the Order of Possession issued by the Denver District Court. While I am not aware that Mr. Allen filed a notice of appeal on or before March 11, 2007, when the mandated 45-day period would have expired, it is clear that the time for filing an appeal had not run before Plaintiff filed his original Complaint on March 1, 2007. *Cf. Sheriff v. Accelerated Receivables Solutions, Inc.*, 2008 WL 2487920, *3 (10th Cir. 2008) (refusing to find a state judgment "final" for *Rooker-Feldman* purposes where the time for filing an appeal had not lapsed).

Given the foregoing chronology, Mr. Allen's Fifth Prayer for Relief survives Defendant Taylor's attempt to invoke the *Rooker-Feldman* doctrine and that portion of Defendants' Motion

to Dismiss should be denied.  In the final analysis, however, that finding and recommendation is rendered moot by principles of claim preclusion which must govern the disposition of this action.

      E.      <u>Principles of Res Judicata</u>

For all of the alleged deficiencies in Plaintiff's Original and Amended Complaint, in the final analysis, Mr. Allen's greatest legal hurtle arises from the preclusive effect of the state-court judgment entered in the 563 Action.  Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties . . . from relitigating issues that were or could have been raised in that action." *Klein v. Zavaras*, 80 F.3d 432, 434 (10th Cir. 1996).

> [W]here the successful pursuit of a federal claim . . . would undermine a prior state judgment or impair rights established thereby, such claim cannot survive application of res judicata principles.  "Judicial economy is not the only reason for the doctrine of res judicata.  Res judicata also preserves the integrity of judgments and protects those who rely on them.

*Copeman v. Ballard*, 214 Fed.Appx. 739, 741 (10th Cir. 2007) (internal citations omitted).  *Cf. Allen v. McCurry*, 449 U.S. 90, 94 (1980) (by promoting the finality of judgments, the res judicata doctrine increases certainty, discourages multiple litigation, and conserves judicial resources).

The res judicata doctrine also encompasses claim preclusion, which bars a party from prosecuting in a subsequent action claims that were litigated or could have been litigated in an earlier action that resulted in a final judgment on the merits.  *Strekal v. Espe*, 114 P.3d 67, 69 (Colo. App. 2004).  Federal courts are required to give the same preclusive effect to state court judgments that would be afforded to those prior judgments by other courts in that state.  *Keller v. Davidson*, 299 F. Supp.2d 1171, 1181 (D. Colo. 2004).  "Under Colorado law, claim preclusion

requires four elements: (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the action. *Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo. 1999). Each of those elements are satisfied in this case. It cannot be disputed that Defendants' motion to dismiss for failure to state a claim in the 563 Action culminated in a final judgment on the merits in favor of Denver Lending and Taylor.[14] *Cf. Wells v. Premier Industrial Corp.*, 691 P.2d 765, 766 (Colo. App. 1984) ("dismissal for failure to state a claim is an adjudication on the merits" pursuant to Fed.R.Civ.P. 41(b)"). *See also AVX Corp. v. Cabot Corp.*, 424 F.3d 28, 30 (1st Cir. 2005) ("[o]rdinarily, a dismissal for failure to state a claim is treated as a dismissal on the merits"); *Federal Deposit Insurance Corp. v. Paul*, 735 F. Supp. 375 , 380 (D. Utah 1990) ("[a] motion to dismiss for failure to state a claim upon which relief can be granted [is a] dismissal on the merits and is accorded res judicata effect").

Claim preclusion typically is raised as an affirmative defense, *see, e.g., Zhu v. St. Francis Health Center*, 413 F. Supp.2d 1232, 1239 (D. Kan. 2006), or either in a motion to dismiss or motion for summary judgment. *See, e.g., Sassower v. Abrams*, 833 F. Supp. 253, 264 n. 18 (S.D.N.Y. 1993). However, a court may apply sua sponte the res judicata doctrine in special circumstances even where a party fails to do so. *See Arizona v. California*, 530 U.S. 392, 412 (2000). *See also Springer v. I.R.S. ex rel. United States*, 231 Fed.Appx. 793, 799 n. 5 (10th Cir.

---

[14]Rule 41(b)(1) of the Colorado Rules of Civil Procedure, which addresses the involuntary dismissal of an action based upon a defendant's motion, provides that

> Unless the court in its order for dismissal otherwise specifies, a dismissal under this section (b) and any dismissal not provided for in this Rule, other than a dismissal for failure to prosecute, for lack of jurisdiction, for failure to file a complaint under Rule 3, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

2007); *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir. 1996); *ORI, Inc. v. Lanewala*, 147 F.

Supp.2d 1069, 1081 (D. Kan. 2001); *Lowell Staats Min. Co., Inc. v. Philadelphia Elec. Co.*, 660

F. Supp. 809, 811 (D. Colo. 1987), *aff'd,* 878 F.2d 1271 (10th Cir. 1989). Here, the court

specifically directed the parties to address in supplemental briefs the potential preclusive effect

of their state litigation. Mr. Allen failed to comply with that Order, even after the court granted

an extension of time.

This action involves the same parties (Allen, Denver Lending, and Taylor), the same real

property, the same transactions, and the same claims asserted in the state action brought by Mr.

Allen. In the wake of the judgment entered by the Denver District Court in the 563 action, the

doctrine of res judicata bars Plaintiff from relitigating those same claims against Denver Lending

Group, Inc. and Bob Taylor in this court. Accordingly, I recommend that the Moving

Defendants' Motion to Dismiss Amended Complaint be granted.


II.     *Plaintiff's Motion for Summary Judgment*

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." Fed.R.Civ.P. 56(c); *Redmon v. United States*, 934 F.2d 1151, 1155 (10th Cir.1991);

*Devery Implement Company v. J.I. Case Company,* 944 F.2d 724, 726 (10th Cir.1991); *Ash*

*Creek Mining Co. v. Lujan,* 934 F.2d 240, 242 (10th Cir.1991); *Continental Casualty Co. v.*

*P.D.C., Inc.,* 931 F.2d 1429, 1430 (10th Cir.1991). In view of the recommendation to grant the

Moving Defendants' motion to dismiss, this court has essentially concluded that Mr. Allen is not

entitled to "judgment as a matter of law." Accordingly, I recommend that Plaintiff's "Amended Combined Motion and Brief in Support of Plaintiff's Motion for Summary Judgment" be denied.

III    *Plaintiff's Motion for Temporary Restraining Order*

In moving for a temporary restraining order, Mr. Allen has requested "appointment or (sic) a receiver to take charge of the asset in the controversy" to "prevent any further injury and harm to plaintiff and his property." *See* Plaintiff's "Motion for Temporary Restraining Order Request for Receivership" (doc. # 85) at 10.

A temporary restraining order seeks to preserve the status quo and prevent irreparable harm just so long as is necessary to hold a hearing and no longer. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974). Under Rule 65(b) of the Federal Rules of Civil Procedure, a temporary restraining order may be granted only if "it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss or damage will result to the applicant." Furthermore, a moving party must meet four prerequisites for temporary or preliminary injunctive relief: (1) demonstrate a substantial likelihood that he will eventually prevail on the merits; (2) show that he will suffer irreparable injury unless injunctive relief is provided; (3) offer proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) show that the injunction, if issued, would not be adverse to the public interest. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted). *See also Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

As a practical matter, Plaintiff's request for a temporary restraining order does not seek to preserve, but rather to change, the status quo. On January 25, 2007, the Denver District Court

entered an Order for Possession in favor of Defendant Taylor, which specifically found that Mr.

Taylor was "entitled to immediate possession" of the Elm Street property. More importantly,

Plaintiff's motion fails to satisfy all of the pre-requisites for relief under Fed.R.Civ.P. 65. For all

the reasons previously stated, Mr. Allen has failed to demonstrate a substantial likelihood of

success on the merits. Mr. Allen also has not demonstrated any likelihood that he will suffer

immediate and irreparable harm in the absence of the requested injunctive relief. *Cf. Wendt v.*

*Edward D. "Tito" Smith*, 2003 WL 21750676, *3 (C.D. Cal. 2003) (noting that an eviction from

property to which there is no legal claim does not amount to irreparable harm). I also note that

Plaintiff's Amended Complaint specifically seeks compensatory damages. As the United States

Supreme Court has recognized, "the possibility that adequate compensatory or other corrective

relief will be available at a later date, in the ordinary course of litigation, weighs heavily against

a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974). Any harm that Mr.

Allen may attribute to the Order of Possession has already occurred and can be fully

compensated through an award of money damages.

This case bears some similarity to the facts in *Bank of New York as Trustee v. Mehner*,

375 F. Supp.2d 1316 (D. N.M. 2005), where the moving party sought a temporary restraining

order to stop the foreclosure sale of their personal residence. After the state court entered a final

judgment and directed that a foreclosure sale proceed, the Mehners removed the lawsuit to

federal court and requested a temporary injunction. In denying that request the federal district

court noted that

> [f]ederal courts are reluctant to get involved in local real estate matters, which are
> generally state matters. There is a question whether the Court should even get
> involved in this dispute . . . . The Bank represents that the state court entered final
> judgment and has ordered the foreclosure sale to take place. . . . The Court is
> concerned that the Mehners had their opportunity to present their case in state

court and, dissatisfied with the results, are now seeking to have the federal court reverse the state court's judgment.

*Id.* at 1319. *See also Cottman Co. v. Dailey*, 94 F.2d 85, 89 (4th Cir. 1938) ("[w]here a judgment is entered by a court of competent jurisdiction, with respect to a matter in controversy before it, such judgment is binding upon the parties and may not reviewed by another court of co-ordinate jurisdiction under guise of exercising the injunctive power").

Accordingly, for the foregoing reasons, this court recommends that Plaintiffs' Motion for Temporary Restraining Order Request for Receivership" (doc. # 85) be DENIED.

Accordingly, **IT IS RECOMMENDED** that:

1.      Defendants Denver Lending Group, Inc. and Bob P. Taylor's  Motion to Dismiss Amended Complaint (doc. # 56) be GRANTED, and that the claims against Defendants Denver Lending Group, Inc. and Bob P. Taylor be dismissed with prejudice;

2.      Plaintiff Tyrone Allen's Amended Combined Motion and Brief in Support of Plaintiff's Motion for Summary Judgment (doc. # 69) be DENIED; and

3.      Plaintiffs' Motion for Temporary Restraining Order Request for Receivership" (doc. # 85) be DENIED.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made. 28 U.S.C. § 636(b)(1). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060. Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right

to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122

(10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this <u>11th</u> day of August, 2008.

BY THE COURT:


<u>*s/Craig B. Shaffer*</u>
Craig B.Shaffer
United States Magistrate Judge